135866 Antonio Saulsberry v. James Holloway Arguments not to exceed 15 minutes per side. Ms. Kennedy for the appellant. May it please the Court, I'd like to reserve three minutes for rebuttal. You may. Mr. Saulsberry was denied his opportunity for federal review of his double jeopardy claim, a claim that this Court already determined warrants consideration on the merits, all because his former CJA-appointed attorney failed to file a document within four days of the District Court's deadline. The District Court's dismissal was an abuse of discretion, and this Court should not hesitate to conclude that a mistake was made. When this Court first granted permission for Mr. Saulsberry to pursue his double jeopardy claim in District Court, it stated that the interests of justice and due process required the appointment of counsel. The attorney that the District Court appointed did not fulfill his professional obligation to Mr. Saulsberry or to the District Court. That attorney failed on multiple occasions to respond promptly and accurately to the District Court's orders. And when Mr. Saulsberry attempted to overcome his attorney's inaction by filing a pro se document, the District Court dismissed the filing because he was purportedly represented by counsel. When the attorney continued to fail Mr. Saulsberry and declined to file a motion to proceed within four days of the District Court's deadline, the District Court mechanically dismissed the petition. It did not consider lesser sanctions. It did not discipline the attorney. It did not evaluate whether the attorney was fulfilling his obligations under the Criminal Justice Act. Instead... I mean, look, the judge moved the case along. He dismissed the case. It was apparently premature. The district judge didn't know all these things at the time he made the dismissal. I think what you're looking for is a simple procedural remand so that Mr. Saulsberry can get his day in court, correct? We certainly, yes, we want Mr. Saulsberry to have his day in court. And we believe that reversal here fits comfortably within this court's precedence. This court has reversed in cases where there has been far less prejudice to the plaintiff and far more egregious conduct by the attorney. Well, what about the fact, as the state says, that your client caused delay by six different actions of his own that seemed to put him in a position where his rights to go forward would be sacrificed when he missed the 10-day deadline, as you mentioned? So I would respectfully disagree with the state's characterization for a few reasons. First, there were not six violations here. At most, there were four attributable to the attorney, plus perhaps a fifth Mr. Saulsberry's attempt to overcome his attorney's failure by filing a pro se document. Was he ordered not to file pro se? Why was that annoying to the district court? Five years earlier, when the district court had initially appointed counsel for Mr. Saulsberry it stated that as a represented party he should proceed through counsel. Now, as a pro se, as a litigant... Was he represented at the time he filed that pro se? He had an appointed attorney, so technically, yes. However, he had already begun to have problems with the cooperation with that attorney? Yes, I think the record here reflects that there was a long history of the attorney simply neglecting the case or failing his obligations. And Mr. Saulsberry's pro se filing stated that he disagreed with the attorney's status report. So the district court was certainly on notice that there was a problem with the relationship between the attorney that it had appointed for this client and the client. And under the Criminal Justice Act, the district court has the authority to substitute counsel if the interests of justice require. Well, the client has some responsibility as well. I mean, you know, these delays and missed deadlines, as you characterize them, may be attorney work, but the client's hardly a helpless person in this circumstance. I mean, the district court told the prisoner May 15, 2013 quite clearly that failure to comply is going to result in dismissal. And I grant you the prisoner did file something to comply with the deadline, but I hardly see this as a situation where the district court You're making it sound like the district court not only erred in dismissing the case, but visited negativity on the prisoner by failing to change counsel, failing to do all these things that the prisoner really should have done, shouldn't he? Well, the prisoner did as much as he could have done as a pro se litigant sitting in prison who had been appointed an attorney. He filed a pro se document as soon as he realized that there was a problem with his attorney's actions. He filed a letter to the case manager in this court when he submitted his certificate of appealability pleading for new counsel, stating that if he did not have new counsel, his case would just die because this attorney was not representing his interests. And when this court granted the certificate of appealability, it stated that new counsel should be appointed. So we would submit that he did it. That would be you. Yes, that would be me. So he did everything that he could in this position. Now, this court has reversed in cases where there were just simply civil litigants who had retained their attorney and who even kept that attorney on appeal. So, for instance, in Carpenter, the same attorney who represented Carpenter in the district court continued to represent him in this court. This court noted that that attorney continued to fail by failing to abide by this court's rules. Nevertheless, this court reversed the dismissal and said that it was unfair to punish that client for his attorney's inaction. Also, in Mulva, the same attorney continued to represent the client. And, in fact, this court initially dismissed the appeal because the attorney failed to file documents in this court. This court later reinstated the appeal and then said that the district court had abused its discretion. Here, where Mr. Salisbury did not even choose his attorney, it seems that reversal is certainly within this court's precedence. That's all the more true because the prejudice to Mr. Salisbury is far greater than the prejudice to a civil litigant. The Supreme Court noted in Link that a client's remedy is typically a malpractice action against the attorney. That may well be true in a personal injury case like Link where a prospective malpractice action may mitigate the harm using the opportunity to litigate the claims on the merits. But here, Mr. Salisbury is challenging his life sentence in prison for a conviction that he alleges violated his constitutional rights. No malpractice action can redress the injury of losing the opportunity to pursue his first federal habeas petition on that claim. What is the name of the CJA attorney from way back when? It was Samuel Perkins. A different attorney was initially appointed but withdrew approximately a month later because of changes in the organization of his law firm. So he no longer had resources. And then Mr. Perkins was appointed in... I just want to check the name. We respectfully request that this court vacate the district court's decision and remand for further proceedings. And if the court has no further... Ms. Kennedy, you're fine. It appears we have no questions, but we might have to hear whether Judge Stranch has one. Judge Stranch, do you have any questions of Ms. Kennedy? No, thank you. All right, thank you. Thank you very much. Good morning. May I please the court? Nick Spangler on behalf of the respondent warden in the state of Tennessee. Here, the district court did not abuse its discretion by dismissing the 2254 petition after fair warning because the petitioner caused significant delay by initiating a four-year stay, which was a regular accommodation in federal habeas cases but nonetheless an accommodation to him, and in violating six court orders, many of which required him to simply supply the district court with additional information to justify the continued stay. How many of those, if I may ask, how many of those shortcomings are attributable to the petitioner and how many are attributable to his apparently very inadequate counsel? Certainly, and I think that is the crux of this case, is the degree to which we attribute these to the petitioner versus his counsel. And the state's position is that all are attributable to him, either sort of constructively or directly. But what difference does it make? I mean, okay, so there's past delay, but it's like 404B evidence. What we're dealing with is the May of 2013 orders, and the question there becomes whether or not, in light of Carpenter and the previous Sixth Circuit action, those delays pass the four-factor test. I mean, so there's a history of delay. There's a history of delay in a lot of cases, but we don't necessarily hold that against people in making a ruling like the one before us today, right? Sure. I think the standard is that the question is whether or not, because of the actions or inactions of the petitioner and his counsel, the state was required to sort of use more resources than would have been necessary had there not been this delay. And certainly, I think I'm the second or third attorney on this case who were required to monitor that. I think we were required to file two or three notices of status. I mean, we're here on this appeal. It's a perfect example, as much as I like to come before the court. I agree, and it's a pleasure to meet you. But, I mean, in all honesty, you folks could have simply ceded to some relief and get this thing moving in the district court. I don't know much about the merits at all. I know statistically the odds of recovery on the merits are going to be quite low. I mean, you've got Jones Dave from Washington, D.C. involved in this. We're all in Cincinnati. I mean, it seems to me like you could have simply let this man have an opportunity to file his petition, waived or at least not oppose the tendency of the court to dismiss, get a ruling on the merits, and we wouldn't have to deal with any of this, right? Certainly, and the state's in a limited position in terms of directing which way the district court should go. But I think the important question here is, you know, it's not what the state should have done or even the district court. I mean, this is the petitioner's case. He's the plaintiff in this case. He's driving the case. He's the one that drove this case. Counselor, this is Judge Strach. If the petitioner's attorney was not responding to court orders and the petitioner himself was prohibited from submitting pro se filing, what exactly should this petitioner or this prisoner have done in this case, given his attorney's failure to respond? Certainly, Your Honor. I appreciate that question, and I think that, you know, that sort of brings me back to Judge Cook's question about, you know, which order violations are attributable to him directly versus which are more constructive. And certainly the violation of the order to not file pro se documents, that's directly attributable to him. But beyond that, he was aware of these order violations that were the product of his counsel not responding to these orders for status updates, not responding to these orders to file a motion to proceed. And he did file this pro se document, but in that pro se document, he didn't say, he just took a position contrary to counsel. The district court's in a position, do we continue to stay, do we not continue to stay, what's the status of the state court proceedings? And instead of coming to the court and saying, my attorney doesn't have a good understanding of what's going on in my case, I need new counsel, he simply filed a document taking a contrary position to his attorney. I think it sets a dangerous precedent if this court requires district courts to every time there's this conflict between counsel and his attorney to sort of peer into that attorney-client relationship. That's not the function of the court. That's the function of boards of professional responsibility and things of that nature. And for the court to require that, I think it's problematic. I'm sorry. Sorry, Judge Strange. Go right ahead. If the court refused his filing because he was pro se and he was saying in this filing, my attorney is incorrect, I am still involved in post-conviction proceedings, and the court said, you can't file pro se, I'm not going to listen to that, you think it would have been different if he had explained that and said, give me a new attorney, and for that failure in his pleading, you think it's not an abuse of discretion to bar him from having a consideration of the merits? I think it's not only abuse of discretion because he failed to specifically request a different attorney, but I think the underlying premise that that even matters is faulty. And I want to bring up, because there's this sort of distinction in some of the case law about whether counsel is retained versus whether counsel is appointed, and I specifically want to direct the court to a couple of cases since this issue is sort of the specific narrow issues coming up during these arguments. It's the Daniel B. Cantrell case, which is 375F3D377, and that cites Tennessee case law for the proposition that clients are responsible for the knowledge of their attorneys. And then beyond that, there's the Jackson v. Chandler decision. It's 463 Federal Appendix 511, and that was a 22- Can I ask a question? Sure. Because the question is, what could he have done? And what you're telling me is that what makes it not an abuse of discretion in this case is that he did not move for new counsel. And if we set up law that says if you move for new counsel, then you're okay, and we will look at what you say. But if you simply file something that says my court is wrong, we won't look at your pleading. I'm struggling with how that's an applicable or a clear-line rule. I think that's a reasonable position. I actually had a case earlier this week where the federal public defenders were appointed, and just before a hearing, the petitioner requested different counsel, and he got that different counsel. For whatever reason, he was not pleased with the performance of his attorney, and he got new counsel. I mean, I think if he had made this request, that specific request in this case, it's reasonable to assume that Judge McCalla would have granted him a new attorney. But again, that sort of assumes this premise that- Why is that reasonable to assume? Well, because I think the question is, what could the petitioner have done? And that's the state's position about what he could have or should have done. But again, we're more in the position of that's not the relevant inquiry. I mean, the inquiry is whether or not we should and can hold petitioners accountable for the actions or inactions of their attorney. Isn't the real question here today whether or not this is the extreme case, the extreme case where the sanction imposed dismissal as a result of a dereliction by counsel is warranted or it's an abuse of discretion? That's, I think, where we want to focus, isn't it? Certainly, Your Honor. And that's why I want to point back to this Jackson v. Chandler decision. It's 463 Federal Appendix 511, and that was a 2254 case that involved the appointment of a public defender. It was actually a state public defender. And the issue in that case was on the appeal from the 2254 decision. Sorry to interrupt. Sure. But I think it may be more pertinent to analyze how the case you're citing, Jackson, fits into the question of willfulness, bad faith, or fault. As Judge Stranch and Judge Cook have pointed out, an attorney's failure to act, which may have occurred in that case, I'm not sure, but a failure to act, as far as I can see, does not constitute contumacious conduct, including refusal to cooperate in discovery, missing court appearances, missing depositions, not late document filings. Judge Cook asked, and I agree, is the case that you're about to cite or is your analysis that what happened here to be established as a rule for this court, that that type of inaction by an attorney constitutes contumacious conduct? I think it does, Your Honor. In that Chandler, the Jackson v. Chandler case, it is similar to a simple oversight or admission in that case where it was the failure to file a timely notice of appeal, and the counsel subsequently moved the district court for additional time to file that notice of appeal. And ultimately it was denied and the case was over with because counsel had failed, and it was appointed counsel. It was not retained counsel. This court will be wrestling with a different case, and I imagine you have, too. That's Carpenter. Certainly. Carpenter puts you, at least in my reading of it, it moves us far toward reversal. And we'd cite the Harmon decision, which refers to the U.S. Supreme Court's decision in Link, which certainly is not only persuasive but binding. And in Harmon, the court held that the district court can endure no more insult than that which was sufficient to uphold the dismissal in the Link case. And in this case, the contumacious conduct that we have comes from two things. It comes from the fact that there were six order violations, some of which were more technical, some of which were the filing of the pro se document. But nonetheless, we have six order violations, which certainly supports an inference of contumacious conduct. And then in addition to that, we have the fair warning of dismissal, which is an independent factor under the Carpenter decision, but there's also case law to support the idea that when there's that fair notice and then the subsequent failure to comply with the court orders, that that also sort of adds to the analysis of whether or not there's fault, willfulness, or contumacious conduct. So that combination of the number of order violations here, which I'm not sure that I've found any other cases involving the sheer number of order violations here, in addition to the fair notice issue, we just submit that, you know, we can't fault the district court for time and again ignoring these orders over and over again. We can't fault the district court for managing its document, pushing the case forward, and dismissing the case. We can't fault the district court in some of these instances, as Judge Murphy says, that this particular district judge didn't quite know because he was beholden to counsel and who was not doing his job. Certainly. So we're not saying personally that he blew it, right? Well, it's a matter of degree because, and I'll point to two things. First of all, he requested counsel. Before this court appointed counsel when this went up as a question about whether or not he could file a successive petition, he had already requested appointed counsel. He certainly has the right to proceed pro se. He chose not to do that. He chose to sort of opt into the system of representative litigation. The other point was, again. Is that an argument for allowing and binding someone to counsel who is clearly not doing his job? And, again, I'd go back to the point that the option the petitioner had in this case is he could have said, instead of just filing a pleading to say, oh, I'm going to take a different position for my counsel, he could have said, counsel's not doing his job and I want him gone and or I want a different counsel. He didn't do that. So the district court's in this weird place where this case has been on a four-year delay as a result of an accommodation stay for this petitioner. He's had his orders violated both by the petitioner. It's not an unusual accommodation to complete your state court proceeding. It's not unusual, but I just sort of emphasize the fact that it is an accommodation. I mean, certainly this court's case law, it is fairly routine in habeas cases, but nonetheless it's an accommodation for which the petitioner bears the continuing burden to justify. And that's the concern is that the district court's wanting to push this case forward, get it moving, and he needs this information. He even requested status updates from the state at one point, which we provided. But, again, it's technically not the state's burden to provide that. It's the petitioner's. And neither the petitioner nor his counsel were providing that information. And, you know, after order violation after order violation, he gets this conflict between the position of the attorney and the petitioner, gives adequate notice, you know, I believe 30 days in advance to say, hey, get me this information or the case is going to be dismissed. And the information didn't come. That's the other thing the petitioner could have done. He could have, even though the previous document was, the pro se document was dismissed, he could have filed another document to say, hey, I don't want this case dismissed. I know I'm not supposed to file pro se, but my attorney's not doing it. Don't dismiss the case or get me another attorney or let me proceed pro se from here on out. He didn't do that. The district court in Memphis has a very heavy docket, as I understand it. I don't have a lot of experience outside of Tennessee, but I'm sure that most district courts have a fairly heavy docket. I think western Tennessee, you know, the judge is trying to move a very heavy docket along down there. I believe that's correct, Your Honor. And that's another important consideration that, you know, the judge is trying to move these cases for and get resolutions. And in the face of sort of this ambiguity about what to do with this federal habeas proceeding, it just doesn't strike me that the court could have a definite and clear and firm conviction that the district court committed a clear error of judgment in this case, and that's the relevant standard under the abuse of discretion. Just briefly, I've got a little bit of time. With regard to the merits of this claim, certainly we're asking the court to affirm on the basis of the district court's order, on the basis of the multiple order violations. But if this case were remanded, I mean, certainly this is not the appropriate form to address the merits of the claim. The district court should have the initial opportunity to address that. The court didn't dismiss on the basis of Rule 4 the substantive merits of the petition. So in the event of a remand, I mean, in the event of a reversal of the court's decision, the case should be remanded for initial consideration. Otherwise, we respectfully ask that you affirm the judgment of the district court. Thank you. I appreciate your argument. Thank you. Anything further? Ms. Kennedy. I just have two quick points. First, the state relies heavily on the argument that the delay should be attributable to the petitioner, but this court's case law makes clear that one factor to evaluate is whether the bad faith is attributable to the attorney or to the client himself. And in the CJA-appointed context, that's particularly important. For information, what case law are you speaking about there? Well, relying on the Criminal Justice Act itself and this court's order that said the interest in But you said the case law of the court, this court, makes clear. Oh, I'm sorry. I'm sorry. So Carpenter, Stowe, Carter, the multitude of cases in which this court has reversed. In addition, although the state relies on a series of violations and claims that Mr. Salisbury should have done something sooner, the district court itself did nothing and let most of those violations pass without a word. In fact, one of the district court's orders assumed that the parties had both complied. So if the district court itself said nothing, then it's hard to ascribe fault to Mr. Salisbury. In addition, the state relies heavily on link, but link does not control here where Mr. Salisbury did not freely select this attorney, where a malpractice action cannot redress his injuries, and where the failure to file documents is not as egregious as the failure to appear. The state's reliance on two key cases apparently in this argument that were not cited in its brief is not appropriate at this stage of the proceedings. And we respectfully request that you vacate and remand for further proceedings. Thank you. Thank you. Thank you both for your arguments. We particularly thank you, Ms. Kennedy. You're appointed under the Criminal Justice Act, and you comported yourself as we hope lawyers appointed under that act would handle their work. So thank you. And now we will adjourn briefly to accommodate substitution of Judge Stranch, and then the court will resume shortly. Thank you. Judge Stranch, I'll call you from the robing room, so if you would hang up now. Thank you. Thank you. Thank you.